IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JORGE MORADEL, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | |
| ) | Case No. 3:25-cv-327 |
| SECRETARY KRISTI NOEM, *In Her* ) | Judge Stephanie L. Haines |
| *Official Capacity, et al.,* ) | |
| ) | |
| Respondents. ) | |

**OPINION**

Petitioner Jorge Moradel ("Mr. Moradel") has been granted Special Immigrant Juvenile Status ("SIJ Status" or "SIJS") in accordance with legal process and has lived in the United States for approximately twenty-five (25) years. He is currently detained at Moshannon Valley Processing Center ("MVPC") under 8 U.S.C. § 1225(b)(2). Mr. Moradel has filed a habeas petition, naming as Respondents: Kristi Noem ("Secretary Noem"), the Secretary of the U.S. Department of Homeland Security ("DHS"); Pamela Bondi ("Attorney General Bondi"), the Attorney General of the United States; Brian McShane ("Director McShane"), the Acting Field Office Director of the Immigrations and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") Philadelphia Field Office ("Philadelphia ICE"); and Respondent Leonard Oddo ("Warden Oddo"), the Warden at MVPC. Mr. Moradel contends that his detention is contrary to law, and he seeks an Order from the Court directing his release.

For the following reasons, the Court finds that Respondents cannot detain Mr. Moradel under 8 U.S.C. § 1225(b)(2)—they may only detain him under 8 U.S.C. § 1226(a), which means he is entitled to a bond hearing. Further, because Mr. Moradel has already received such a bond hearing and been ordered released by an Immigration Judge ("IJ"), the Court will GRANT Mr.

Moradel's Habeas Petition IN PART and order his release on the terms imposed by the IJ.[1] The Court DENIES Mr. Moradel's Petition in all other respects. Finally, because the Court is granting Mr. Moradel's Habeas Petition in part, the Court DENIES AS MOOT his Motion for a P.I. at ECF No. 3.

I.    **Background**

Mr. Moradel represents that he "is a 29-year-old citizen of Honduras and resident of New Jersey who was granted [SIJ Status] by U.S. Citizenship and Immigration Services ("USCIS") in 2016." (ECF No. 1 at 2). According to Mr. Moradel, he entered the country in 2000, when he was four years old. (*Id.* at 6). Mr. Moradel states that he does have a criminal record, but not all of his convictions stand to this day. (*Id.* at 7).

Mr. Moradel further represents that, in "February 2025, [he] was re-detained by DHS at an immigration check-in at DHS's office in Newark, New Jersey." (*Id.* at 8). According to Mr. Moradel, on September 4, 2025, he had a bond hearing, at which time the Immigration Judge ("IJ") found that "he had jurisdiction to hear Mr. Moradel's bond hearing. The IJ agreed that Mr. Moradel

---

[1] In his Habeas Petition, Mr. Moradel seeks an order from this Court finding that "the automatic stay 8 C.F.R. § 1003.19(i)(2) violates due process in this case," as well as related relief pertaining to Respondents' application of that automatic stay to him. (ECF No. 1 at 27). As the parties have informed the Court, (ECF Nos. 11, 12), Respondents are no longer detaining Mr. Moradel pursuant to this automatic stay provision. Instead, he is detained pursuant to Respondents' conclusion that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (ECF No. 11 at 2). Therefore, insofar as Mr. Moradel challenges the application of 8 C.F.R. § 1003.19(i)(2) to him, that challenge is now moot. *Rodney v. Mukasey*, 340 F. App'x 761, 764 (3d Cir. 2009) ("Accordingly, insofar as [petitioner] challenged the lawfulness of his detention pursuant to 8 U.S.C. § 1226(c), and he is no longer in custody pursuant to that statute, his appeal is moot.").

However, Respondents are incorrect insofar as they appear to argue that Mr. Moradel is not challenging his detention under 8 U.S.C. § 1225(b)(2). (*See* ECF No. 11). Indeed, in his Habeas Petition, Mr. Moradel makes distinct arguments as to why 8 U.S.C. § 1226(a), not § 1225(b)(2), governs his detention, (ECF No. 1 at 10–14, 18), and he seeks a declaration from this Court "that [his] continued detention is contrary to law and unconstitutional[,]" alongside an "Order that DHS release [him] …" (*Id.* at 27). Therefore, the Court finds that the primary remaining issue before it is whether Mr. Moradel may be detained under §1225(b)(2) as opposed to § 1226(a).

was not a danger to society based on the evidence [Mr. Moradel submitted.] The IJ found that a $7,500 bond would mitigate any risk of flight." (*Id.* at 8–9).[2]

However, as the parties agree, Mr. Moradel is still detained at MVPC because the Board of Immigration Appeals (the "BIA") concluded that he is detained pursuant to § 1225(b)(2), which does not permit aliens to be released on bond. Critically, even given Mr. Moradel's criminal record, neither party indicates that Respondents are detaining him pursuant to 8 U.S.C. § 1226(c).

Accordingly, the Court now turns its attention to resolving the issue of which statute set forth by the parties (§ 1225(b)(2) or § 1226(a)) governs Mr. Moradel's detention, which in turn resolves the remaining legal issues that Mr. Moradel is presenting to the Court.

**II.   Discussion**

   **A.   Jurisdiction**

"The Supreme Court has held that § 2241 confers jurisdiction upon the federal district courts to consider cases challenging the detention of aliens during removal proceedings." *Bystron v. Hoover*, 456 F. Supp. 3d 635, 640 (M.D. Pa. 2020) (citing *Demore v. Kim*, 538 U.S. 510 (2003); *Zadvydas v. Davis*, 533 U.S. 678 (2001)). Thus, "a habeas petition under § 2241 is the proper vehicle for an inmate to challenge 'the fact or length of confinement,' *Preiser v. Rodriguez*, 411 U.S. 475, 494 (1973), or the 'execution' of his confinement." *Bystron*, 456 F. Supp. at 640 (quoting *Woodall v. Fed. BOP*, 432 F.3d 235, 241–42 (3d Cir. 2005)). Indeed, a district court "may issue a writ of habeas corpus when a petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* (internal quotation marks and citation omitted); 28 U.S.C. § 2241(c)(3).

   **B.   § 1226(a) Governs Mr. Moradel's Detention**

---

[2] In all relevant respects, Respondents agree with Mr. Moradel's recounting of the facts. (*See* ECF No. 8).

As this Court has previously explained, upon careful examination of §§ 1225(b)(2) and 1226(a), the Court "finds that § 1225(b)(2) is tethered more closely to the border and speaks to the potential detention of aliens there, whereas § 1226(a) applies more readily to the potential detention of aliens who have been living within the country." *Calzado Diaz v. Noem*, No. 3:25-CV-458, 2025 WL 3628480, at *4 (W.D. Pa. Dec. 15, 2025).[3] The Court briefly reiterates its reasons for reaching that conclusion.

First, in *Jennings v. Rodriguez*, 538 U.S. 281 (2018), after offering an overview of §§ 1225 and 1226 in general, the Supreme Court wrote the following:

> In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Jennings*, 583 U.S. at 288–89 (emphasis in original).

To this Court, the foregoing language (and other aspects of *Jennings* like it) compels the conclusion that a majority of the Justices on the Supreme Court when it decided *Jennings* viewed § 1225 as tethered more closely to the border and § 1226 as applying more readily to the interior of the country.

Further, even assuming without deciding that this language from *Jennings* is dicta, the Court observes that it has before it no Supreme Court precedent holding that Respondents' interpretation of §§ 1225 and 1226 is correct. Therefore, based on this Court's reading of *Jennings*, the Court sets forth a metaphorical scale. On the side of that scale that is assessing the strength of Respondents' reading of the statute, there is no weight added by the Supreme Court. On the other side of the scale, that assessing the strength of the reading that says § 1225 is tethered more closely to the border and § 1226 applies more readily to the interior of the country, there is the weight of

---

[3] The Court refers the reader to its decision in *Calzado Diaz* for a more fulsome explanation of its reasoning.

Supreme Court dicta. Most assuredly, that dicta from the Supreme Court, which this Court "should not idly ignore[,]" *In re McDonald*, 205 F.3d 606, 612 (3d Cir. 2000) ("[W]e should not idly ignore considered statements the Supreme Court makes in dicta."), tips the scale (and this Court) *heavily* in favor of finding that § 1226(a) applies to Mr. Moradel.

The second basis for the Court's reading of §§ 1225(b)(2) and 1226(a) are the titles Congress ascribed to each statute. Section 1225's title begins "Inspection by immigration officers[,]" and likewise, § 1225(a) is entitled "Inspection[.]" On the other hand, § 1226 is entitled "Apprehension and detention of aliens[.]" In this way, the titles provided by Congress seem to indicate that § 1225 is tailored to inspection of aliens—which typically occurs at the border — while § 1226 is more readily applied to aliens who are in the interior of the country—i.e., those who have a stronger connection to the country. *See* 8 U.S.C. § 1225(a)(3) (providing that all aliens "who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers."); *Zumba v. Bondi*, No. 25-CV-14626 (KSH), 2025 WL 2753496, at *8 (D.N.J. Sept. 26, 2025) (indicating that inspections "occur at ports of entry, their functional equivalent, or near the border."); *Dubin v. United States*, 599 U.S. 110, 120–21 (2023) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.") (internal quotation marks and citation omitted). Indeed, this Court has previously examined these aspects of the relevant statutes and concluded that "§ 1225 is tethered more closely to the border and applies more readily to someone with a weak connection to the country, while § 1226 is tethered more closely to the interior of the country and applies more readily to someone with a strong connection to the country." *Del Cid v. Bondi*, No. 3:25-CV-304, 2025 WL 2985150, at *16 (W.D. Pa. Oct. 23, 2025).

Therefore, based on the Supreme Court's language in *Jennings* and the wording of §§ 1225 and 1226, the Court finds that § 1225 is tethered more closely to the border and § 1226 applies more readily to the interior of the country. In reaching this holding, the Court notes that "the *vast* majority of district courts that have arrived at the same conclusion." *Bethancourt Soto v. Soto*, No. 25-CV-16200, 2025 WL 2976572, at *7 (D.N.J. Oct. 22, 2025) (collecting cases).[4]

Applying the Court's finding to Mr. Moradel, the Court reiterates that he has now been present in this country for approximately twenty-five (25) years, he has been granted SIJ Status, and he was detained in Newark, New Jersey. *See supra* Section I. Therefore, the Court readily holds that § 1226(a) governs his detention, not § 1225(b)(2).[5]

Critically, Federal Regulations "provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 538 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Accordingly, the Court would normally order Respondents to provide Mr. Moradel

---

[4] In reaching this conclusion, the Court reiterates one item that may distinguish it from at least certain other district courts. Specifically, there is caselaw on the interplay between §§ 1225/1226 that makes a distinction between an alien who is "actively" or "affirmatively" seeking admission into the country and one who is not. *Bethancourt Soto*, 2025 WL 2976572, at *6–7. This Court stresses that it declines to adopt that rationale as part of the basis for its decision. Instead, this Court simply finds that, generally speaking, § 1225 speaks of "applicants for admission" who are "at or near the border or a port of entry," whereas § 1226 speaks to individuals within the country and possessing greater connection thereto. *Calzado Diaz*, 2025 WL 3628480, at *7 n.5.

[5] The Court observes that 8 U.S.C. § 1225(b)(1)(A)(iii) permits the Attorney General to apply Section 1225(b)(1) to "any or all aliens described in subclause (II) as designated by the Attorney General." 8 U.S.C. § 1225(b)(1)(A)(iii)(I). That subclause describes such an alien as one who "is not described in subparagraph (F), who has not been admitted or paroled in the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year-period immediately prior to the date of the determination of inadmissibility under this subparagraph." *Id.* § 1225(b)(1)(A)(iii)(II). In other words, the INA, via *§ 1225(b)(1)*, "allows the DHS to expeditiously remove certain aliens apprehended up to two years after entering the United States and who were encountered anywhere within United States territory[.]" *Osorio-Martinez v. Att'y Gen. U.S.*, 893 F.3d 153, 173 (3d Cir. 2018).

Of course, Respondents are not purporting to detain Mr. Moradel under § 1225(b)(1), nor could they in light of the fact that he has been in this country for over twenty-five years and has SIJ Status. *See supra* Section I. Therefore, the Court need not concern itself with the application of § 1225(b)(1) in this case. However, the presence of this provision within § 1225 does counsel against a reading of §1225 that says *it only* applies *immediately* at the border. And indeed, the Court does not reach such a finding in this case. Instead, the Court simply finds that § 1225 is tethered *more closely* to the border, whereas § 1226 speaks *more* to the interior of the country. As applied to Mr. Moradel, who has been present in the country for over twenty-five (25) years, has SIJ Status, and was detained in Newark, New Jersey, *see supra* Section I, the Court has no difficulty whatsoever finding that § 1226(a), not § 1225(b)(2), governs his detention.

with a bond hearing consistent with § 1226(a) and all related provisions of law within seven (7) days of the date of this Opinion.

However, because an IJ has already ordered Mr. Moradel's release on bond, the Court will order Mr. Moradel's release on the conditions imposed by the IJ in his September 4, 2025, Order. The Court stresses that the relief it is affording in this case is unique to Mr. Moradel. The Court would not normally order release of an alien detainee who is being held under § 1226(a) without a bond hearing. It only does so in this instance because an IJ has already held a bond hearing and ordered release, and the Court will neither require duplicative work by the IJ nor further delay Mr. Moradel's release from custody

### III. Conclusion

For all of the foregoing reasons, the Court grants Mr. Moradel's Habeas Petition insofar as he challenges his detention under 8 U.S.C. § 1225(b)(2). The Court finds that he is detained pursuant to 8 U.S.C. § 1226(a), not § 1225(b)(2), and the Court therefore holds that he is entitled to a bond hearing. Because Mr. Moradel has already had such a bond hearing and been ordered released, the Court directs that Respondents release him from custody immediately. Finally, the Court denies Mr. Moradel's Habeas Petition and Motion at ECF No. 3 in all other respects.

An appropriate Order follows.

DATED: December 23, 2025

/s/ Stephanie L. Haines
STEPHANIE L. HAINES
U.S. DISTRICT COURT JUDGE